IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00241-EWN-MEH

BIG TREE, INC., f/k/a EDWARD SPEIR ENTERPRISES, INC.,
d/b/a 3t Systems, a Colorado Corporation,

   Plaintiff,

vs.

NEWDAY FINANCIAL LLC, a/k/a First Guaranty Mortgage Corp.,

   Defendant.
_____

**RECOMMENDATION ON DEFENDANT NEWDAY FINANCIAL LLC's
MOTION TO COMPEL ARBITRATION AND TO STAY CIVIL ACTION**
_____

Defendant has filed a Motion to Compel Arbitration and to Stay this Civil Action (Docket #7), which has been referred to this Court by the District Judge (Docket #8). The Motion is fully briefed, and oral argument would not materially assist the Court in its adjudication. For the reasons set forth below, the Court recommends that the Motion be **granted**.

**I.   Facts**

Plaintiff and New Day Partners, LLC[1] entered into a Master Professional Services Agreement (MPSA) in August 2003, under which Plaintiff was to provide automation software and services. As its name indicates, the MPSA was to serve as the foundation for the relationship between Plaintiff and New Day Partners, LLC. Each specific project under the MPSA was to performed by a separately executed Statement of Work (SOW). The MPSA stated that "[t]he terms and definitions of [the MPSA] shall apply to all SOWs issued hereunder." The MPSA had a provision requiring that "all

---

[1] New Day Partners, LLC was formerly known as Community First Financial, including at the time the MPSA was signed.

disputes under this Agreement . . . shall be submitted to the American Arbitration Association ("AAA") for binding arbitration."

The only work performed under the MPSA was pursuant to five separately executed SOWs. Two of the five SOWs stated that the SOWs were "governed by the terms and conditions of the **Master Services Agreement** between **New Day Financial** . . . and 3t Systems. . . ." A third SOW stated that it was "governed by the terms and conditions of the **Master Services Agreement** between **Community First Financial** . . . and 3t Systems . . . ." A fourth SOW stated that it was "governed by the terms and conditions of the **Master Professional Services Agreement** ("MPSA") dated and effective **January 21, 2004**, between **New Day Financial**, and [Plaintiff]." A fifth SOW stated that it was "governed by the terms and conditions of the **Master Professional Services Agreement** ("MPSA") dated and effective **January 13, 2004**, between **Community First Financial**, and [Plaintiff]." (Emphasis added throughout)  The only services provided by Plaintiff, under any or all of the SOWs, was for NewDay Financial, a wholly-owned subsidiary of New Day Partners, LLC. The record contains no evidence of any work performed directly for the parent, New Day Partners, LLC. The parties have provided no "Master Services Agreement" (so denominated) whatsoever, nor any "Master Professional Services Agreement" other than one dated August 2003.[2]

NewDay Financial initiated an arbitration proceeding against Plaintiff on December 28, 2005. In that proceeding, Plaintiff challenged NewDay Financial's standing to initiate arbitration. New Day Partners, LLC then joined the arbitration action against Plaintiff on February 17, 2006. Plaintiff filed

---

[2]Plaintiff and New Day Partners, LLC also executed a Software License Agreement ("SLA") dated August 7, 2003. The SLA also contains a mandatory arbitration provision. The SLA was incorporated into one of the SOWs.

2

this suit on February 10, 2006.

**II.     Discussion**

Under the Federal Arbitration Act (FAA), 9 U.S.C. § 3, a district court *must* stay judicial proceedings when a written agreement provides that the subject of the litigation must be submitted to arbitration. "'There is a strong federal policy favoring arbitration for dispute resolution.'" *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1514 (10th Cir. 1995) (quoting *Peterson v. Shearson/American Express, Inc.,* 849 F.2d 464, 465 (10th Cir. 1988)). If there is uncertainty as to whether a claim is arbitrable, "[a]ll 'doubts are to be resolved in favor of arbitrability.'" *Id.* (quoting *Oil, Chem., & Atomic Workers Int'l Union, Local 2-124 v. American Oil Co.,* 528 F.2d 252, 254 (10th Cir. 1976)).[3]

On the other hand, arbitration is a contractual matter, and parties may not be required to submit to arbitration claims which they have not contractually agreed to submit. *AT&T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 648 (1986); *Coors Brewing Co.*, 51 F.3d at 1516. Only claims having "a reasonable factual connection to the contract" are arbitrable. *Id.* In addition, a nonsignatory to an arbitration agreement may enforce the agreement if he is a third party beneficiary. *O'Connor v. R.F. Lafferty & Co.,* 965 F.2d 893, 901 (10th Cir. 1992). "An intent to benefit the third party must be apparent from the construction of the contract in light of all

---

[3]It is true that the presumption in favor of arbitration "disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. American Golf Corp.,* 299 F.3d 1216, 1220 (10th Cir. 2002). However, here Plaintiff does not dispute the existence of a valid arbitration agreement; it only contends that NewDay Financial cannot compel the arbitration. Thus, the presumption stands unrebutted.

surrounding circumstances to qualify that party as a third party beneficiary." *Id.*[4]

The fact that NewDay Financial was not the contracting party under the MPSA or the SLA does not preclude NewDay's enforcement of the MPSA, because it is clear that NewDay "was, at the very least, a third party beneficiary" of the MPSA. *Gibson v. Wal-Mart Stores, Inc.*, 181 F.3d 1163, 1170 n.3 (10th Cir. 1999) (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 946-47 (11th Cir. 1999) (explaining that a nonsignatory may enforce an arbitration agreement under a third party beneficiary theory when the parties to the agreement have agreed, upon the formation of their agreement, to confer the benefits thereof to the nonsignatory); *Arnold .v Arnold Corp.--Printed Communications for Bus.,* 920 F.2d 1269, 1281 (6th Cir. 1990) (citing cases from several circuits for the proposition that nonsignatories of arbitration agreements may be bound by such agreements under ordinary contract and agency principles)). All the circumstances surrounding the course of conduct between the parties, as well as the various written contracts which governed the scope of work, support the fact that NewDay Financial was the intended and actual beneficiary of the contractual relationship between New Day Partners, LLC and Plaintiff. Further, Plaintiff and NewDay Financial had a direct contractual relationship under which they agreed to be bound by the MPSA. Moreover, the MPSA does not contain a provision prohibiting third party beneficiaries to the contract.

Alternatively, Plaintiff may be compelled to engage in arbitration under an "alternative estoppel theory." "Thus a willing non-signatory seeking to arbitrate with a signatory that is unwilling may do so under what has been called an 'alternative estoppel theory,' *Thomson-CSF. S.A. v.*

---

[4]The case law requires that Plaintiff, the reluctant party here, received a direct benefit under the contract which contained the arbitration clause. *Zurich American Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 688 (7th Cir. 2005). Here, the *principal* benefit received by Plaintiff was under the MPSA and the SLA, which both contain an arbitration clause, and under the SOWs, which incorporated the MPSA and the SLA.

4

*American Arbitration Ass'n*, 64 F.3d 773, 779 (2nd Cir. 1995), which takes into consideration 'the relationships of persons, wrongs and issues.' *Choctaw Generation Ltd. Partnership v. American Home Assur. Co.*, 271 F.3d 403, 406 (2nd Cir. 2001)." *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 131 (2nd Cir. 2003). Here, throughout the written documents governing their relationship, the parties interchange the terms "Master Services Agreement" and "Master Professional Services Agreement"; "Community First Financial," "New Day Partners, LLC," and "NewDay Financial"; and the various execution dates of the MPSA. However, it is clear from the record that all the work was done between Plaintiff and NewDay Financial, without complaint by the Plaintiff, and the record contains only one "Master" agreement. The relationship was initially between New Day Partners, LLC and Plaintiff, but thereafter, all transactions were between NewDay Financial and Plaintiff, and all of them were performed pursuant to contractual provisions (either directly or incorporated by reference) that require binding arbitration. Nothing that Plaintiff states in its opposition remotely challenges these facts. Under these circumstances, whether NewDay Financial is considered a nonparty to the MPSA/SLA and is permitted to enforce the arbitration agreement against Plaintiff pursuant to the case law cited above,[5] or it is a party to a binding arbitration agreement with Plaintiff by means of the SOWs which expressly incorporate the MPSA and the SLA, the parties must arbitrate their dispute.

Based on the record before the Court and the briefs of the parties, the Court recommends that Defendant NewDay Financial's Motion to Compel Arbitration and to Stay Civil Action be **granted**.

---

[5]*See also GATX Management Servs., LLC v. Weakland*, 171 F. Supp.2d 1159 (D. Colo. 2001) (non-signatory may compel arbitration against signatory is arising under the contract containing the arbitration clause); *Roe v. Gray*, 165 F. Supp.2d 1164 (D. Colo. 2001) (same).

**III.     Conclusion**

Accordingly, for the reasons stated above, the Court RECOMMENDS that Defendant Newday Financial LLC's Motion to Compel Arbitration and to Stay Civil Action [Filed March 7, 2006; Docket #7] be **granted**.  Defendant has established that the MPSA governs the contractual relationship of these parties and contains a mandatory arbitration provision to which both parties must submit.  Under Fed. R. Civ. P 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.[6]

Dated at Denver, Colorado this 17th day of April, 2006.

BY THE COURT:

 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge

---

[6] The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy of this Recommendation may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).